IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

SCOTTSDALE INSURANCE COMPANY,

      Plaintiff,

v.

BENJAMIN D. WILHELM;
RIVER ROOTS, LLC;
JONATHAN OCHMAN; and
ALEJANDRA OCHMAN,

      Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

Scottsdale Insurance Company ("Scottsdale") submits its complaint for declaratory judgment and jury demand as follows.

### PARTIES

1. Scottsdale is an insurance company organized under the laws of the State of Ohio with its principal place of business in the State of Arizona. Scottsdale is a surplus lines company, only allowed to issue insurance policies in the State of Colorado through licensed, surplus lines agents.

2. Defendant River Roots, LLC, ("River Roots") is a limited liability company and medical marijuana producer incorporated under the laws of the State of Colorado, and with its principal place of business located at 52719 US Highway 50 East, Boone, Pueblo County, Colorado 81025.

1

3. Defendant Benjamin D. Wilhelm ("Mr. Wilhelm") is a citizen of Colorado residing at 52825 US Highway 50 East, Boone, Pueblo County, Colorado 81025. Mr. Wilhelm is a member of River Roots.

4. Defendants Jonathan Ochman ("Mr. Ochman") and Alejandra Ochman ("Ms. Ochman") (collectively, "Underlying Action Plaintiffs" or "Plaintiffs") are citizens of Pennsylvania residing at 114 Ash Street, Rochester, Beaver County, Pennsylvania 15074.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 based on complete diversity of citizenship and the amount in controversy exceeding $75,000.

6. Venue is proper under 28 U.S.C. § 1391, in that one or more of the defendants reside in district, because the insurance policy that is the subject of this declaratory judgment action was issued or delivered in this judicial district, or because a substantial part of the events giving rise to this action occurred in this judicial district.

## BACKGROUND

### THE UNDERLYING ACTION AGAINST DEFENDANTS WILHELM AND RIVER ROOTS

7. On January 12, 2021, Plaintiffs Jonathan Ochman and Alejandra Ochman, husband and wife, filed a complaint against Mr. Wilhelm and River Roots (collectively, "Underlying Action Defendants" or "Defendants") in the U.S. District Court for the District of Colorado, Case No. 1:21-cv-00085-CMA-SKC.

8. On March 10, 2021, Plaintiffs filed an Amended Complaint ("the Complaint"). A true and correct copy of the Complaint is attached as Exhibit 1 to this complaint.

9. The Complaint seeks damages in excess of $75,000. (Compl. ¶ 3; *see also id.* at pp. 14, 16, 19, 20 (prayers for relief demanding damages in excess of $75,000 and/or $100,000).

10. The Complaint alleges that Mr. Wilhelm, in the course of his employment by and/or operation of River Roots, committed a physical and sexual assault against Mr. Ochman.

11. The Complaint alleges that River Roots is a medical marijuana producer with its principal place of business located in Pueblo County, Colorado. (*Id.* ¶ 12.)

12. The Complaint alleges that Mr. Wilhelm, who resides in Pueblo County, owned and operated River Roots. (*Id.* ¶¶ 11, 14.)

13. The Complaint alleges that the actions alleged in the Complaint, including Mr. Wilhelm's assault on Mr. Ochman, occurred at 52711 Highway 50 East, Boone, Pueblo County, Colorado 81025. (*Id.* ¶ 17.)

14. The Complaint alleges that River Roots had duties: (1) to maintain a safe business environment, (2) to maintain business and employment relationships that would not foreseeably harm other persons with whom River Roots conducts business or invites to its place of business, and (3) not to employ an individual who presented a foreseeable risk of harm to others. (*Id.* ¶¶ 18–19, 22.)

15. The Complaint alleges that Mr. Wilhelm, as an owner of River Roots, had a duty to maintain a safe environment for all persons on River Roots' business premises, and to avoid causing harm to any such persons. (*Id.* ¶¶ 20–21.)

16. The Complaint alleges that, on or about February 17, 2020, Mr. Ochman was a business invitee at River Roots, having been invited to tour River Roots' property by Jason

Higley ("Mr. Higley"), who holds himself out as an owner and operator of River Roots. (*Id.* ¶¶ 24–28.)

17. The Complaint alleges, that evening, Mr. Ochman, Mr. Wilhelm, and Mr. Higley were drinking liquor at Mr. Higley's residence, which is erroneously alleged to be upon River Roots' business premises. (*Id.* ¶¶ 29–30.)

18. The Complaint alleges that Mr. Ochman and Mr. Wilhelm stayed up after Mr. Higley went to bed. (*Id.* ¶ 31.)

19. The Complaint alleges, sometime thereafter, Mr. Higley sent Mr. Ochman several texts, which included the statements:

- "Stop giving [Mr. Wilhelm] shit! And get him out of my house!"
- "[T]he one thing you can do to piss off everyone on the farm is giving [Mr. Wilhelm] alcohol! . . . [Mr. Wilhelm is] bi polar your closer to a physical fight then you know [sic]. Be careful!"
- "Your going to get raped lol [sic]"
- "Stop telling him to do a shot! Please for god sake STOP[.]"

(*Id.* ¶ 32.)

20. The Complaint alleges that, at some point after Mr. Higley went to bed, Mr. Ochman and Mr. Wilhelm went outside Mr. Higley's residence to smoke a cigarette. (*Id.* ¶ 34.)

21. The Complaint alleges that, while they were outside, Mr. Wilhelm attempted to kiss Mr. Ochman multiple times while also grabbing Mr. Ochman's testicles. Mr. Ochman blocked Mr. Wilhelm and denied his physical advances. (*Id.* ¶¶ 34–35.)

22. The Complaint alleges that Mr. Wilhelm then bit Mr. Ochman's finger and began to physically assault him; Mr. Wilhelm pinned Mr. Ochman to the ground and continued to punch and strike Mr. Ochman. (*Id.* ¶ 36.)

23. The Complaint alleges that, while Mr. Wilhelm had Mr. Ochman pinned to the ground, Mr. Wilhelm licked Mr. Ochman's face and began to choke him, continuing until Mr. Ochman lost consciousness. (*Id.* ¶¶ 37–38.)

24. The Complaint alleges that, while Mr. Wilhelm was assaulting Mr. Ochman, he whispered to Mr. Ochman, "[T]his is going to happen." Mr. Ochman began to scream. (*Id.* ¶¶ 39–40.)

25. The Complaint alleges that, eventually, Mr. Ochman escaped from under Mr. Wilhelm and left the property. (*Id.* ¶ 41.)

26. The Complaint alleges that Mr. Ochman suffered injuries requiring medical attention as a result of Mr. Wilhelm's attack. (*Id.* ¶ 42.)

27. The Complaint alleges that River Roots was on notice that Mr. Wilhelm was a risk to the health and safety of others due to employees' complaints of unwanted physical contact and sexual advancements. (*Id.* ¶ 43.)

28. The Complaint does not allege an occurrence at the River Roots grow facility address or arising out of that operation. (*See generally id.*)

29. The Underlying Action asserts six claims for relief against Mr. Wilhelm and/or River Roots: (1) negligent retention and hiring; (2) battery; (3) assault; (4) liability under *respondeat superior*; (5) premises liability; and (6) loss of consortium. (*Id.* ¶¶ 44–109.)

30. Mr. Ochman seeks damages for "pain and suffering, anxiety, stress, bruising, black and blue eyes, embarrassment, medical bills, passing out, bite marks, humiliation and emotional and psychological distress." (*Id.* ¶¶ 57, 66, 77, 92, 105.) Ms. Ochman seeks damages for the actual or potential deprivation of "the aid, assistance, comfort, consortium and society of . . . Mr. Ochman." (*Id.* ¶ 109.)

## THE INSURANCE POLICY

### I.    THE APPLICATION FOR INSURANCE

31. On December 12, 2019, River Roots submitted an application for commercial general liability and commercial property insurance coverages from Scottsdale ("the Application"). The Application was dated and signed by Mr. Wilhelm.

32. The named insured for the property was listed as Mr. Higley, who owns the property at 52719 Highway 50 East that River Roots was leasing. The Application included a Lessor's Risk Supplemental Application, reflecting that the exposure for which coverage is sought is intended to be limited to that of a lessor.

33. River Roots' Application for insurance only sought coverage for the premises located at 52719 Highway 50 East, Boone, Colorado 81025.

34. The Application only identified and described a single building for which it was seeking coverage: River Roots' marijuana grow facility, located at 52719 Highway 50 East, Boone, Colorado 81025.

35. The Application did not seek coverage for, or even reference, Mr. Higley's residences located at 52711 Highway 50 East, Boone, Colorado 81025.

36. Above the signature lines on each section of the Application, the following notice was provided:

> **NOTICE TO COLORADO APPLICANTS:** It is unlawful to knowingly provide false, incomplete or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages . . . .

## II. THE POLICY

37. Based on River Roots' representations in the application for insurance, Scottsdale issued Commercial General Liability Policy No. CPS7066165 ("the Policy") to named insured River Roots and Jason Higley, pursuant to ISO Form No. CG 00 01 04 13. Relevant portions of the Policy are attached to this complaint as Exhibit 2. The Policy was in effect December 22, 2019, to December 22, 2020.

38. Coverage A, which applies to liability for bodily injury or property damage caused by an "occurrence," contains a limit of liability of $1,000,000 per "occurrence." Coverage B, which applies to liability for personal and advertising injury contains a limit of liability of $1,000,000. The Policy has a general aggregate limit of liability in the amount of $2,000,000.

39. The Policy included an endorsement titled "Limitation of Coverage to Designated Premises, Project or Operation form, ISO Form No. CG 21 44 04 17 ("the Designated Premises endorsement"). The Designated Premises endorsement modified the insuring agreement of Coverage A and Coverage B to limit coverage to liability for bodily injury or property damage caused by an "occurrence" and personal and advertising injury that takes place on the premises shown in the Schedule: 52719 East US Highway 50, Boone, Colorado 81025.

    40.    The insuring agreement for Coverage A provides, in part:

1. Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    b.  This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

        (1)    The "bodily injury" or "property damage":

            (a)    Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

            (b)    Arises out of the project or operation shown in the Schedule.

        (2)    The "bodily injury" or "property damage" occurs during the policy period; and

        (3)    Prior to the policy period, no insured listed under Paragraph 1 of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that

      the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured knew prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

41. The Policy includes the following definitions:

    3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

    . . .

    13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    . . .

    17. "Property damage" means:

        a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For the purposes of this insurance, electronic data is not tangible property . . . .

42. Coverage A of the Policy includes the following exclusion:

    a. Expected Or Intended Injury

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

43. The insuring agreement of Coverage B of the Policy provides:

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply . . . .

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if:

      (1) The offense arises out of your business;

         (a) Performed on the premises shown in the Schedule; or

         (b) In connection with the project or operation shown in the Schedule; and

      (2) The offense was committed during the policy period.

   However, with respect to Paragraph 1.b.(1)(a) of this Insuring Agreement, if the "personal or advertising injury" is caused by:

      (1) False arrest, detention or imprisonment; or

      (2) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies,

10

>>committed by or on behalf of its owner, landlord, or lessor;

>then such offense must arise out of your business performed on the premises shown in the Schedule and the offenses must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

44. Section II of the Policy states:

SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   . . .

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

45. The Policy includes the following definitions:

    14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

        a. False arrest, detention or imprisonment;

        b. Malicious prosecution;

        c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

        d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

        e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.  The use of another's advertising idea in your "advertisement"; or

    g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

. . .

  18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

46. The Policy further provides:

  6. Representations

   By accepting this policy, you agree:

    a.  The statements in the Declarations are accurate and complete;

    b.  Those statements are based upon representations you made to us; and

    c.  We have issued this policy in reliance upon your representations.

## DEFENDANTS WILHELM AND RIVER ROOTS' CLAIMS FOR INSURANCE COVERAGE

47. Mr. Wilhelm and River Roots requested insurance coverage for the Underlying Action under the Policy.

48. The conduct alleged in the Underlying Action is not covered by the Policy.

49. The Underlying Action does not seek damages because of "bodily injury" or "property damage" resulting from an "occurrence"; nor does it seek damages due to "personal or advertising injury" resulting from a covered offense.

50. The Underlying Action does not seek damages arising from "bodily injury," "property damage," or "personal or advertising injury" that occurred on the insured premises, i.e., River Roots' marijuana grow facility located at 52719 Highway 50 East, Boone, Colorado 81025, or arising out of the operations thereof.

51. Defendants Wilhelm and River Roots did not disclose Mr. Higley's residence located at 52711 Highway 50 East, Boone, Colorado 81025, in River Roots' Application for insurance coverage; nor is it identified in the declarations of the Policy.

52. Scottsdale has nonetheless agreed to defend Mr. Wilhelm and River Roots in the Underlying Action subject to a full reservation of rights, including the right to disclaim coverage, to seek a declaration in court of its rights and obligations, and to seek reimbursement of the cost of defending Mr. Wilhelm and River Roots in the Underlying Action.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment—Against Defendants Wilhelm and River Roots)**

53. Scottsdale incorporates the above paragraphs as if set forth in full.

54. There is no coverage under the policy, because, *inter alia*, the damages sought in the Underlying Action were not caused by an "occurrence" arising from "bodily injury," "property damage," or "personal or advertising injury" that occurred on the insured premises or arose out of the operations thereof. Further, the harm alleged in the Underlying Action constitutes expected or intended injuries from the standpoint of the insured.

55. There is a real, substantial, and justifiable issue in controversy between the parties hereto with respect to insurance coverage for the Underlying Action under the Policy.

56. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, for the purpose of determining a question in actual controversy between the parties.

57. A judicial determination and a declaration of the rights and obligations of the parties are necessary and appropriate at this time.

58. Scottsdale requests that the Court determine that Scottsdale has no obligation under the Policy to defend, indemnify, or otherwise provide coverage with respect to the Underlying Action.

59. A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties under the Policy.

WHEREFORE, Scottsdale respectfully requests that the Court enter a declaratory judgment in its favor and against Mr. Wilhelm and River Roots, finding that Scottsdale has no duty to defend or indemnify Mr. Wilhelm or River Roots in the Underlying Action under the Policy, and compelling Mr. Wilhelm and River Roots to reimburse Scottsdale for the costs of defense incurred to date.

## SECOND CLAIM FOR RELIEF
(Reimbursement—Against Defendants Wilhelm and River Roots)

60. Scottsdale incorporates the above paragraphs as if set forth in full.

61. Defendants Wilhelm and River Roots, insureds of Scottsdale, tendered their defense in the Underlying Action to Scottsdale.

62. Scottsdale agreed to extend Defendants Wilhelm and River Roots a defense in the Underlying Action subject to a timely and lawful reservation of its rights under the Policy and applicable law.

63. Among the rights reserved by Scottsdale was the right to bring an action against Defendants Wilhelm and River Roots to recover the sums paid by Scottsdale in the defense of Defendants Wilhelm and River Roots in the Underlying Action.

64. This procedure is authorized and appropriate under Colorado law, which provides that one proper course for a liability insurer that believes it has no duty to defend is for that insurer to defend its insured, but reserve its rights to seek reimbursement should it later be determined that the incident resulting in liability was not covered by the policy.

65. Although acceptance of the reservation is not required in order for the reservation to be effective, Defendants Wilhelm and River Roots did not object thereto and expressly or impliedly agreed to their defense being provided by Scottsdale under this reservation of rights.

66. Defendants Wilhelm and River Roots accepted the benefit of the defense provided under reservation by Scottsdale.

67. Pursuant to its reservation of rights, Scottsdale has paid and continues to pay Defendants Wilhelm and River Roots' costs of defense in the Underlying Action.

68. In fact, for the reasons stated above, the Policy does not provide coverage to Defendants Wilhelm and River Roots for the claims in the Underlying Action.

69. Scottsdale is entitled to reimbursement from Defendants Wilhelm and River Roots for any and all sums spent in providing a defense to Defendants Wilhelm and River Roots in the Underlying Action.

70. Defendants Wilhelm and River Roots have been, and will continue to be, unjustly enriched if allowed to retain the benefit of the defense provided by Scottsdale in the Underlying

Action even though the Policy does not provide coverage for the claims and damages asserted therein.

WHEREFORE, Scottsdale prays for judgment in its favor and against Mr. Wilhelm and River Roots for the amount of the defense fees and costs incurred in the defense of Mr. Wilhelm and River Roots in the Underlying Action, for pre-judgment and post-judgment interest as provided by law, for an award of its costs, and for such other and further damages and relief as the Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Scottsdale respectfully requests that the Court enter a declaratory and monetary judgment in its favor and against Mr. Wilhelm and River Roots, to include the following relief:

1. declaring that Scottsdale owes no obligation under the Policy to defend, indemnify, or otherwise provide coverage with respect to the following civil action: *Jonathan Ochman et al. v. Benjamin D. Wilhelm and River Roots, LLC*, Case No. 21-cv-00085-CMA-SKC (U.S.D.C., D. Colo.);

2. declaring that Scottsdale is entitled to reimbursement of all amounts paid to or on behalf of Mr. Wilhelm and River Roots related to the Underlying Action, including all amounts incurred in defending the lawsuit in federal court against Mr. Wilhelm and River Roots and in bringing this action, and entering an award in favor of Scottsdale in that amount;

3. awarding costs, attorney fees, and pre-judgment and post-judgment interest as permitted by law; and

4. entering a judgment for such other and further relief as the Court deems just and proper under the circumstances.

Dated:  October 5, 2021                                  Respectfully submitted,


*s/ Terence M. Ridley*
Terence M. Ridley
Michael Joseph Kaufmann
Spencer Fane LLP
1700 Lincoln Street, Suite 2000
Denver, CO  80203-4554
Telephone:  303.839.3800
Facsimile:  303.839.3838
Email:   tridley@spencerfane.com
            mkaufmann@spencerfane.com

Attorneys for Plaintiff
Scottsdale Insurance Company